**LUCERNE PRODUCTS, INC., et al.,**
**Plaintiffs-Appellees,**

v.

**CUTLER–HAMMER, INC.,**
**Defendant-Appellant.**

No. 76–1983.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 11, 1977.

Decided Sept. 29, 1977.

Frederick M. Bosworth, Frank C. Henry, Bosworth, Sessions & McCoy, Niel A. Du-Chez, Cleveland, Ohio, for defendant-appellant.

Richard J. Egan, Baldwin, Egan, Walling & Fetzer, Henry J. Zetzer, M. Reese Dill, Merkel, Campbell, Dill & Zetzer, Cleveland, Ohio, for plaintiffs-appellees.

Before PHILLIPS, Chief Judge, WEICK and EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

After two appellate hearings, multiple briefings, and a remand to the District Court, this patent appeal is finally before the court on the merits. The history of this case is long, complex and now basically irrelevant to the current appeal. Nonetheless, we recite it [1] in skeletal form in the footnote below.

As to our current issues, appellant Cutler-Hammer contends that this court should reverse the District Court, which held that plaintiff Lucerne Products' patent (Matthews Reissue Patent RE. 26,267) is valid and has been infringed by appellant. Appellant contends that the Matthews Patent RE. 26,267 (hereinafter Matthews RE. 267) was not infringed and, anyway, that it is obvious to a person skilled in the art and is

---

1. This suit was originally filed eleven years ago, in 1966, by Lucerne Products, Inc. and Slater Electric, Inc., against Sears, Roebuck & Co. It alleged that Sears, Roebuck was infringing Matthews Patent 3,222,488 and Slater Patent 3,103,618. Matthews '488 was subsequently reissued by the Patent Office as Matthews RE. 26,267, and Slater '618 was reissued as Slater RE. 26,119. These reissue patents were substituted in the original suit for the original two patents and another Slater patent, Slater 3,328,676, was added.

Before trial, original defendant Sears was dismissed from the suit by stipulation of the parties and replaced by defendant Cutler-Hammer, Inc., and Electronic Control Corp. The case was then tried before the United States District Court for the Northern District of Ohio, Eastern Division, between May 16, 1972 and August 16, 1972. On July 27, 1972, and subsequently on December 30, 1974, the District Judge entered findings of fact and conclusions of law pertaining to the Slater patents referred to above, holding both patents invalid and not infringed. No appeals from these two orders are before this court, nor is Slater an appellant here.

As to Matthews RE. 26,267, on June 29, 1973, the District Court entered an order holding it to be valid and infringed, and on June 24, 1974, entered findings of fact and conclusions of law in support of that order which are directly challenged by this current appeal. Further, on December 30, 1974, the District Court entered findings of fact and conclusions of law finding no misuse of Matthews RE. 26,267, which conclusion is also a subject of appellant Cutler-Hammer's current appeal.

The District Judge's first judgment in this case was entered March 7, 1975, and amended March 31, 1975. After an appeal to this court and briefing and oral hearing, the case was remanded in an order dated April 27, 1976, because this court deemed the amended judgment not to be a final and appealable order. On June 25, 1976, the District Court entered a second amended judgment from which this current appeal is taken.

invalid because it was anticipated by the prior art. Appellant also contends that appellee committed fraud on the Patent Office by not disclosing a portion of that prior art, namely, the Stearns Patent 1,892,542. Appellant also argues as additional grounds for reversal that Matthews RE. 267 was not lawfully reissued by the Patent Office, that plaintiff Lucerne was guilty of misuse of the patent in suit, that Lucerne had disclosed the patent by public use more than one year before application for Matthews RE. 267, and that the District Judge erroneously and prejudicially excluded certain of defendant-appellant's exhibits.

Since, for the reasons given by the District Judge in his various opinions in this case, we find merit in only three of the issues stated above, we limit our discussion to the issues of infringement and validity of plaintiff's Matthews Reissue Patent RE. 26,267 and appellant's claim of fraud on the Patent Office.

### THE PATENT IN SUIT

The District Judge entered lengthy findings of fact and conclusions of law in this case, basically rejecting those submitted by appellant Cutler-Hammer and adopting those submitted by appellee Lucerne. The claimed invention is a small electrical switch mechanism generally employed in electrically powered hand tools. It has been chiefly employed in applications where its operation was actuated by a trigger in hand held tools. The patented device is applicable to one-speed operations, but can be adapted to provide varied speeds.[2]

The District Judge's findings of fact (drawn as indicated above) provide the following description of appellee's patent in its most favorable light:

4. Plaintiff, Lucerne Products, Inc., is the owner of the entire right, title and interest in and to U.S. Letter Patent No.

RE. 26,267, which was duly and legally issued to Benjamin H. Matthews on September 26, 1967 for an invention entitled "ELECTRICAL SWITCH WITH CAMMING BRIDGING CONTACT," upon an application filed by him in the United States Patent Office February 28, 1966, Serial No. 534,282.

5. The switch structure that is described in the Matthews RE. 26,267 patent is an ON–OFF designed to close the circuit by lifting the leading end of bridging contact so that it does not slide on and off the stationary contact but rather drops down it and pulls away from it on a vertical basis so that arcing is reduced to a minimum and the contact areas are kept clean, thus prolonging the life of the switch and eliminating failures. The five claims in said patent are summarized as follows:

a. An electric switch, consisting of a stationary insulator base having two spaced contacts with a projection between them, and a conductive sliding bridging contact with opposite contacting ends correspondingly spaced with a recess between them, so supported and arranged that on linear movement of the bridging contact toward the ON position, its leading end is held in a raised position until it approaches a position opposite the base contact, when the bridging contact pivots and the base projection enters the recess of the bridging contact causing the leading end to be lowered on a vertical bias to make contact with the base contact and close the circuit in the ON position; and wherein the same action takes place in reverse order when the bridging contact is moved in the opposite direction to the OFF position.

b. The trailing end of the bridging contact engages its corresponding con-

---

2. Matthews Patent 3,389,365, which was issued to Matthews for a variable speed version of this device, has been declared invalid by the Seventh Circuit because of public use for more than one year before the patent application. *Skil Corporation v. Rockwell Manufacturing*

*Co.*, 358 F.Supp. 1257 (N.D.Ill.1973), *aff'd sub nom. Skil Corporation v. Lucerne Products, Inc.*, 503 F.2d 745 (7th Cir. 1974), *cert. denied*, 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975).

tact on the base before the bridging contact pivots so that any arcing is limited to the leading end of the bridging contact and its corresponding base contact.

c. A flat surface between the leading end of the bridging contact and the recess therein which on linear movement of the bridging contact causes it to ride on the base projection so as to avoid closing the circuit until the projection encounters the recess.

d. Means of supporting the bridging contact so that the ends of the bridging contact slide across the base contacts upon engagement and disengagement with a wiping action.

e. A combination of all the foregoing claims which permits the base projection to be a part of the base contact.

6. The mechanics by which this is accomplished are fully described in the patent and in Matthews' testimony, viz.

(A) The switch 12 [see Matthews' sketches p. 7 *infra*] includes a pair of spaced stationary contacts 19 and 20 and bridging contact 27 that is slidable with respect to the stationary contacts 19 and 20 between a bridging position to define the ON position for the switch (Fig. 6) and a non-bridging or OFF position for the switch (Fig. 5). The switch 12 has a slidable actuator 16 which includes a trigger portion 16a that projects outwardly of the pistol grip 11 for actuation by the hand of the operator gripping the pistol grip of the tool.

(B) The principal and distinguishing feature of the patented switch is the pivotal action of the bridging contact 27 about its *trailing end* as the bridging contact moves between its (Fig. 5) OFF and (Fig. 6) ON positions for the switch. This pivotal action for the bridging contact 27 is accomplished solely by pivoting it about its trailing end on the projection 29 that is positioned between the stationary contacts and which engages the bridging contact as it is moved linearly between its (Fig. 5) (ON) position and (Fig. 6) (OFF) position. This movement of said bridging contact 27 between the Fig. 5 and Fig. 6 positions is effective to pivot the bridging contact *about its trailing end* so as to lift or raise the leading end thereof with respect to the stationary contact 20.

7. The switch of the Matthews RE. 26,267 patent is constructed so that when the switch is actuated to its (Fig. 6) ON position (ON), the trailing end of the bridging contact 27—located at the left end as viewed in Fig. 5—engages its associated stationary contact 19 *before* the leading end of the bridging contact drops onto its coacting stationary contact 20 whereby "arcing," if it is to take place, will occur *only* at the leading end of the bridging contact 27, while the trailing end of the bridging contact 27 remains cool. This specially arranged construction positively insures that the leading end of the bridging contact 27 will always engage its stationary contact *after* the trailing end of the bridging contact has already engaged its stationary contact.

Also, when the switch is actuated to its (OFF) position (Fig. 5), the leading end of the bridging contact—located at the right end of this contact in Fig. 6—breaks engagement with its associated stationary contact 20 *before* the trailing end of the bridging contact breaks engagement with its associated stationary contact 19. This also insures that the leading end of the bridging contact is the "working end" of the bridging contact where only heat or arcing may occur.

The spring pressure exerted by the compression spring 28 upon the bridging contact 27 is *constant immediately* upon the leading end of the bridging contact 27 engaging the stationary contact 20 and thereafter as the switch is actuated to its full (ON) position (Fig. 6) and, as wiping action of the bridging contact 27 on stationary contact 20 takes place this spring pressure remains *constant* to keep the two contact surfaces clean. This constant spring pressure also reduces contact bounce.

8. This switch of the '267 patent is designed primarily for portable electric power tool usage to provide a "retro" fit with existing switch devices in portable tools.

It is, of course, impossible for a layman to visualize the patent in suit from this description. The following sketches, which were exhibits at trial, help to show its operation and to indicate its salient features:

Sept. 26, 1967          B. H. MATTHEWS          Re. 26,267

ELECTRICAL SWITCH WITH CAMMING BRIDGING CONTACT

Original Filed March 31, 1964                    2 Sheets-Sheet 2

INVENTOR.
BENJAMIN H MATTHEWS
BY
Meyer, Baldwin, Doran & Egan
ATTORNEYS

In comparison, the following are respectively appellant's and appellee's pictorial versions of the Cutler-Hammer "accused" switch.

Appellant's version:

Appellee's version:

Although out of sequence in the development of this opinion, for convenience we follow these sketches with sketches of the two prior art patents which will be subjects of later consideration:

Sept. 4, 1951      R. I. DISSINGER      2,566,720

SLIDE SWITCH

Filed Aug. 15, 1949

INVENTOR.
GEORGE I. DISSINGER

BY

ATTORNEY

Dec. 27, 1932.

J. C. STEARNS

1,892,542

ELECTRIC SWITCH

Filed June 20, 1930

Fig. 1.

Fig. 2.

Fig. 3.

Fig. 4.

Fig. 5.

Fig. 6.

Fig. 7.

Fig. 8.

Fig. 9.

Inventor
Jason C. Stearns
By Attorneys

Discussion of these prior art inventions will follow in this opinion under the sections dealing with Anticipation and Obviousness.

### INFRINGEMENT

█ This record convinces us, as it did the District Judge, that appellant Cutler-Hammer deliberately copied at least one version of Lucerne's electrical switch and did so in disregard of a presumptively valid patent.

Again, we turn to the District Judge's findings of fact on this issue.

13. The uncontradicted testimony of Cutler-Hammer's employee, Harry W. Brown, the designer-engineer of the Cutler-Hammer Catalog 8341 and 8348 speed controls, the same controls which are accused herein as infringing the Matthews patent RE. 26,267 in suit, clearly establishes that the *origin* of the Cutler-Hammer controls was the Lucerne control which Brown dismantled in October 1964, and from which he made extensive and complete sketches. The Lucerne switch assembly found in the Lucerne speed control and which incorporates the invention of the Matthews reissue patent RE. 26,-267 was then deliberately and wilfully appropriated into the Cutler-Hammer controls Catalog Nos. 8341 and 8348.

Cutler-Hammer also identified its employee, engineer Harry W. Brown, as the person who contributed to the development, design and engineering of the above identified Cutler-Hammer trigger operated speed controls Catalog Nos. 8341K2 and 8348K3.

14. The deposition of Harry W. Brown admits the following events:

In October 1964 Cutler-Hammer purchased several portable electric drills of the Skil Corporation, each equipped with a Lucerne speed control.

Mr. Brown took the Lucerne speed control out of at least one of these Skil drills and completely dismantled the Lucerne control, closely examined the same, measured each component and made twenty-five (25) sketches consisting of all of the components included in the Lucerne control.

\*   \*   \*   \*   \*   \*

The switch components used in the Cutler-Hammer speed control Model 8341 are shown in Px 90(a–d) and in particular Px 90b. This particular arrangement of switch contacts was first seen by Brown in the original Lucerne speed control which he examined in October 1964 and from which Lucerne control he made the group of sketches identified as Plaintiff's Exhibit 96.

Brown admits that this particular arrangement of switch contacts which show the feed contact, speed control contact, and shunting contact, disposed in linear spaced relation one to the other is *absolutely necessary* in order to make the Cutler speed control operate as required.

Brown also admits that the contact strip used in this arrangement of contacts is *basically the Lucerne design* of which he made the aforementioned sketches appearing in Plaintiffs' Exhibit 96 and that the use of this particular contact strip with the hump on the end *was to accentuate the opening* of the circuit, and that the *source* used by him to design this arrangement of contact *is the Lucerne switch;* that this particular arrangement *was disclosed in the original sample of the Lucerne switch* which was shown to Cutler-Hammer by Black & Decker in the meeting between Black & Decker and Cutler-Hammer employees on September 2, 1964.

15. As seen in Dx 113, the ON–OFF switch mechanism used in the switch arrangement used in the 8341 Cutler controls includes the first stationary or elongated contact marked EC which has the projection P formed integrally on its end, the bridging contact BC shown movable over the elongated contact (EC) and which is pivotable about its trailing end (TE) by projection P to raise or lower the leading end (LE) of the bridging contact

away from or toward the first stationary contact marked SC. This identified switching mechanism is operable to turn the Cutler-Hammer speed control ON and OFF.

In the closed position (ON) of the switch the ends of the bridging contact (trailing end TE and leading end LE), exactly like the switch of the Matthews patent RE. 26,267, are the *only* parts of the bridging contact that engage the stationary contacts of the switching mechanism (elongated contact EC and the first stationary contact SC). The operative parts of the switch are the same and operate the same way to produce the same result, i. e., to turn the switching mechanism ON and OFF, exactly like the switching mechanism in the Matthews RE. 26,267 patent in suit. The function of the projection (hump) P on the end of the elongated contact in the Cutler control is exactly the same as the projection in the Matthews '267 patent, i. e., to lift the leading end (LE) of the bridging contact up and away from the stationary contact (SC) to rapidly open the switch in the Cutler control. Further, the function, location and operative relation of the projection P with the bridging contact in the Cutler control is exactly the same as in the '267 patent (Px 8) regardless of whether it is a part of the stationary contact or a part of the base. (Emphasis in original).

The District Judge concluded:

16. The switch structure of the defendant's accused controls (Dx 113) incorporates the equivalent structure that is described and claimed in the Matthews patent RE. 26,267.

The findings of fact of the District Judge on infringement are not clearly erroneous in our view and lead directly to the conclusion he reached. See Fed.R.Civ.P. 52(a); *Schlegel Manufacturing Co. v. United States Marine Corp.,* 525 F.2d 775, 782 (6th

Cir. 1975), *cert. denied,* 425 U.S. 912, 96 S.Ct. 1509, 47 L.Ed.2d 763 (1976). This, then, requires us to turn to consideration of appellant's claim that Matthews RE. 267 is invalid because of anticipation and obviousness.[3]

## ANTICIPATION

In his findings of fact and conclusions of law, to which we have previously referred, the District Judge also dealt with anticipation. *See* 35 U.S.C. § 102 (1970), *as amended,* (Supp. V 1975). His analysis of the Dissinger switch is as follows:

17. The switch of the Dissinger patent 2,566,720 relied upon by defendant Cutler-Hammer, Inc. as prior art is an ON-OFF switch assembly having a movable contact unit that is slidable between OFF and ON positions for the switch, which includes a spacer block 29 which carries a resilient spring-like contact member 31. The spacer block 29 is slidable to and fro linearly between its positions whereby the ends of the spring-like contact member 31 flex up and down as they ride up onto and over the ribs 18 and into and out of engagement with the stationary contacts 24 and 27. The spacer block 29 rides in guide recess 42 which also limits the to and fro movement of the block. This movable contact unit merely slides linearly to and fro, it does *not* pivot about either of its ends. The ends of the spring-like contact member 31 must be flexible as they engage the ribs 18, otherwise the movable contact unit would stop as the ribs 18 are engaged. The primary purpose of the ribs 18 is to flex the ends of the resilient spring-like contact 31 so as to give the switch its "snap-action" between its OFF and ON positions.

In moving between its ON and OFF positions the ends of the spring-like contact 31 merely flex as they engage and slide over the insulating plastic material forming the ribs 18 and base 13, 14, and

**3.** We note also that the Supreme Court has held that patent validity should be inquired into whenever the issue can be reached. *Sinclair &*

*Carroll Co. v. Interchemical Co.,* 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945).

then in the OFF position both ends of the contact 31 rest upon the insulating plastic material. The Dissinger switch clearly is not the same or equivalent to the switch structure of the Matthews patent RE. 26,267. In the Matthews switch, the movable or bridging contact 27 pivots about its trailing end in moving between its ON and OFF switch positions by reason of its coaction with the projection 29. When actuating the movable contact to its ON position (Fig. 6), the trailing end of this movable contact must be in contact with its associated stationary contact 19 *before* the leading end of the movable contact engages its associated stationary contact 20. Likewise, in turning the Matthews switch OFF, the leading end of the movable contact breaks its connection with its associated stationary contact 20 *before* the trailing end disengages from its associated stationary contact 19. In this way any tendency for the Matthews switch to arc when moving to its OFF position is confined to the leading end of the movable contact 27. Also, the leading end of this movable contact is lifted up and held away from any material when moving to its OFF switch position to prevent contamination thereto.

Again we agree with the District Judge's conclusion and hold that his findings of fact which preceded that conclusion are not clearly erroneous. The Dissinger switch was designed to move its two bridging contacts into operating position by making the bridging contacts travel in basically the same plane, snapping over insulating ribs on the two stationary contacts at approximately the same time. While we recognize that, as claimed by appellant, the ribs do serve somewhat the same function as projection 29 in the Matthews RE. 267 patent design, it is clear that the Dissinger patent is distinguishable from Matthews RE. 267 in three relevant respects. In Dissinger both the trailing end of the bridging contact and the leading end of the bridging contact engage the stationary contacts at approximately the same instant, thereby affording the possibility of arcing at two points in the switch rather than one. Also, if the two ribs on the Dissinger drawing may be thought of as performing somewhat the same function as projection 29 on the base of the '267 switch, it is clear that they are much smaller and that the snap action as the Dissinger bridging contacts slide over the ribs may be argued to achieve both a less instant and less positive contact and, in moving to the "off" position, a less instant and less complete separation than that which is achieved by the camming action of the '267 switch over projection 29 on its base. Additionally, the ribs are made of insulating material and in sliding over them the bridging contacts may carry contaminants onto the stationary contacts. Thus on three counts the Matthews switch may be regarded as improving upon the Dissinger switch. First, the single contact made by the leading end of the '267 bridge under spring pressure eliminates entirely one of the two Dissinger possibilities for arcing. Second, it also, by camming action over a higher projection, may reduce arcing by the more instantaneous contact and break of the single contact achieved. Third, the Matthews sole contact, the leading end of the bridge, does not slide over insulating material and hence does not tend to contaminate the stationary contact.

Turning now to the Stearns patent, we note the findings of the District Court on this score also:

19. The switch of the Stearns patent 1,892,542 also claimed as prior art over Matthews, is an ON–OFF switch wherein the movable contact 33 teeter-totters about its center in contrast to the Matthews patented switch wherein the bridging contact 27 pivots about its *trailing end* by reason of its coaction with the projection 29, and which projection of Matthews may be formed of insulative material or conductive material inasmuch as its function is purely mechanical, i. e., to pivot the bridging contact 27 about its trailing end. In the Stearns switch the projection is required to be a conductor as

part of one stationary contact inasmuch as it is *used* as part of the conducting path in the ON position of the switch.

The switch of the Stearns patent is also referred to in the art as a "kissing-type" switch. In this type of switch the contact pressure progressively increases, the movable contact engages the stationary contact (which it is moving toward in the ON switch position) with very slight pressure, i. e., it "kisses" this contact, and thereafter as the movable contact moves to its full ON position this pressure progressively increases.

In contrast, in the switch of the Matthews patent RE. 26,267 the movable contact pivots about its trailing end, and in moving to the ON position, the movable contact engages the stationary contact with a maximum spring pressure at the instant the movable contact is moved to the ON position and this spring pressure remains constant as the movable contact is moved to its full ON position.

We agree that the description of the comparison of Stearns to Matthews in the first paragraph quoted above is accurate. We do not, however, agree that the two subsequent paragraphs contrasting the single contact of the Stearns switch as its bridge moves to the "on" position with the single contact of Matthews affords any meaningful distinction between the two switches. On the contrary, Stearns teaches a single "on"-"off" contact. It also teaches an instant and positive contact under spring pressure in moving to the "on" position and an instant and complete break in moving to the "off" position leading directly toward the Matthews RE. 267 function and structure. Stearns also teaches avoidance of sliding the single contact face over any insulating material—again leading directly toward the function and structure of Matthews RE. 267. To this extent we find that the last two paragraphs quoted above are clearly erroneous.

■ Appellant's argument in relation to anticipation, however, is not that either Dissinger or Stearns fully anticipated the Mat-

thews RE. 267 patent, but rather that, taken together, Dissinger and Stearns did fully anticipate '267 when used in combination. Since we believe that the camming action of the Matthews RE. 267 bridging contact over projection 29 is distinguishable from both the Dissinger bridge which basically slides into position in the same plane and the Stearns switch which both slides and teeter-totters in its action, we agree with the District Judge that even taken in combination, the Dissinger and Stearns patents do not fully anticipate Matthews RE. 267.

This court has previously held:

> In order to anticipate an invention, it is necessary that all of the elements of the invention or their equivalents be found in one single description or structure, where they do substantially the same work in substantially the same way.

*Allied Wheel Products v. Rude,* 206 F.2d 752, 760 (6th Cir. 1953).

*See also Tee-Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193, 1196–98 (6th Cir. 1974).

We agree and hold that appellant's anticipation defense fails.

We express strong disagreement, however, with the findings and conclusions in the District Judge's statements concerning the Stearns patent that the Stearns patent was not a part of the prior art required to be disclosed by Matthews at least as of January 17, 1967, when Cutler-Hammer's answer to Lucerne's Amended Complaint put him on notice of its existence. On this point again we hold the findings of the District Judge to be clearly erroneous.

## OBVIOUSNESS

The Constitution of the United States, Art. I, § 8 provides: "The Congress shall have Power . . . To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. Art. I, § 8, cl. 8. Pursuant to this power, 25 years ago the Congress of the United States provided a three-part defini-

tion of what constitutes "inventors" and "discoveries" for constitutional purposes. An inventor may under this statute obtain a 17-year monopoly on his invention, but only if his device meets the statutory prerequisites of 1) novelty, 2) utility, and 3) nonobviousness. 35 U.S.C. §§ 101–103 (1970).

Section 103, which we believe to be dispositive of this appeal, reads as follows:

§ 103. Conditions for patentability; non-obvious subject matter

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The leading case construing the obviousness test in § 103 is *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), wherein the Supreme Court stated:

While the ultimate question of patent validity is one of law, *Great A. & P. Tea Co. v. Supermarket Corp., supra,* at 155 [71 S.Ct. [127] at 131] [340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950)], the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to

be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. *Graham v. John Deere Co., supra* at 17–18, 86 S.Ct. at 694.

This Circuit has developed a three-step method of determining whether a patent is invalid for obviousness: 1) a factual determination of the prior art; 2) a factual determination of what improvement the patentee has made over the prior art; and 3) a legal determination of whether the improvement would have been obvious to one skilled in the art. *Westwood Chemical, Inc. v. Owens-Corning Fiberglas Corp.,* 445 F.2d 911, 914 (6th Cir. 1971), *cert. denied,* 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 786 (1972); *Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co.,* 332 F.2d 406, 411 (6th Cir.), *cert. denied,* 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93 (1964).

By use of this analysis we reach the conclusion that Matthews RE. 267 fails the test of patentability because its only novel feature was "obvious" to one skilled in the art in the light of two prior art patents—Dissinger and Stearns.

From the beginning of this case down to date we have been impressed with several facts about the Matthews RE. 267 patent which appellee Lucerne cites and the District Judge found to support its validity. First, we are convinced that the Matthews device is useful. We note that the record discloses without dispute and that the District Judge found that it had enjoyed considerable commercial success. Secondly, we are convinced, as was the District Judge, that the device does have some novelty. In fact, the conviction that Matthews' device had both the utility and the novelty required to meet the statutory conditions, plus the presumption of validity to which the Patent Office's issuance of the patent entitled the inventor (*see* 35 U.S.C. § 282 (1970), *as amended,* (Supp. V 1975)) motivated this court's original inclination to affirm the District Judge's holding of patent validity.

It was not until we sought first to analyze appellee's asserted correction of its

original '488 patent in Reissue Patent 267 and then sought to define exactly in what ways Matthews RE. 267 differed from the combined prior art disclosed by the Dissinger and Stearns patents that we began to appreciate how slight a change from matters known to those skilled in the art Matthews RE. 267 discloses. In the preceding section, we expressed this difference as involving only "the camming action" of the bridging contact over projection 29. On this basis, however, we denied appellant's contention that Matthews RE. 267 was fully anticipated by prior art.

Even if a patent is not fully anticipated, however, Congress has provided, as indicated above, "[a] patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103 (1970).

This court has previously described the distinction between the defenses of anticipation (§ 102) and obviousness (§ 103):

> We must be careful to make the distinction between novelty and invention in relation to anticipation. Novelty and invention are two separate tests, and anticipation belongs only with novelty.

> \*     \*     \*     \*     \*     \*

> Thus it is incorrect to say that a patent lacks invention because it is anticipated. If it is anticipated it lacks novelty; it lacks invention if it would have been obvious. *Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co.*, 332 F.2d 406, 411 (6th Cir.), *cert. denied*, 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93 (1964).

We now hold that the single novel distinction in the patent in suit is the camming action over projection 29, as described above, and that this change was work which was obvious to a skilled mechanic familiar with the art at the time the invention was made.

We appreciate fully that neither party characterizes this novel feature in exactly the same way we have. The District Judge adopted appellee's language and described the novel feature thus:

> In the Matthews switch, the movable or bridging contact 27 pivots about its trailing end in moving between its ON and OFF switch positions by reason of its coaction with the projection 29. When actuating the movable contact to its ON position (Fig. 6), the trailing end of this movable contact must be in contact with its associated stationary contact 19 *before* the leading end of the movable contact engages its associated stationary contact 20. Likewise, in turning the Matthews switch OFF, the leading end of the movable contact breaks its connection with its associated stationary contact 20 *before* the trailing end disengages from its associated stationary contact 19. In this way any tendency for the Matthews switch to arc when moving to its OFF position is confined to the leading end of the movable contact 27. Also, the leading end of this movable contact is lifted up and held away from any material when moving to its OFF switch position to prevent contamination thereto.

The original patent, Matthews 3,222,488, described the movement of the bridging contact over the projection on the base in terms of "camming." The reissued patent, Matthews RE. 267, changed that description to "pivoting . . . about the trailing end." While appellee argues there is a material difference between the two descriptions, we do not agree. The camming action of the bridging contact over the projection causes the trailing end to pivot. There is only one movement of the bridging contact in moving to the "on" position and the camming action over the projection controls that movement.

On the other hand, appellant talks of this movement in terms of an "air gap" between the leading contact and the stationary contact, and asserts that "Stearns lifted and lowered the leading end of the BG-contact

[bridging contact] 30 up from, and down onto ST-contact [stationary contact] 16 by sliding the bottom of the BG-contact on and relative to the bump 20 the same as Matthews did with his projection 29."

Whether the novel feature be described in the language we have chosen or that employed by appellee or appellant, it seems clear to us that increasing the suddenness with which the leading contact met (or lifted from) a single stationary contact to complete (or break) the circuit was an improvement over Dissinger.

We have previously noted, however, how the Stearns patent pointed toward both the function and the structure of the Matthews RE. 267. In discussing anticipation, we said: "Stearns teaches a single 'on'-'off' contact. It also teaches an instant and positive contact under spring pressure in moving to the 'on' position and an instant and complete break in moving to the 'off' position leading directly toward the Matthews RE. 267 function and structure. Stearns also teaches avoidance of sliding the single contact face over any insulation material—again leading directly toward the function and structure of Matthews RE. 267." (See p. 795 *supra*).

We take judicial notice of the fact that as of the time the Matthews Reissue Patent issued, the small electrical switch field was a crowded one. Likewise, we take judicial notice of the fact that the principles of camming, pivoting and bridging are ancient in the mechanical arts. The only feature Matthews added was substituting the camming action of the bridging contact for the teeter-totter action of Stearns. Two expert witnesses testified for appellant that the difference between the Stearns patent and the Matthews patent would have been obvious to one skilled in the art. Only Matthews himself denied obviousness.

Our ultimate view of this appeal is that Matthews RE. 267 must be declared invalid because its only novel disclosure was "obvious" within the meaning of § 103. While the facts in this record support this conclusion and any other would be clearly erroneous, we reach it as a matter of law. *See Westwood Chemical, Inc. v. Owens-Corning Fiberglas Corp.*, 445 F.2d 911, 914 (6th Cir. 1971), *cert. denied*, 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 786 (1972); *Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co.*, 332 F.2d 406, 411 (6th Cir.), *cert. denied*, 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93 (1964).

In *Sears, Roebuck & Co. v. Stiffel*, the Supreme Court said:

> To begin with, a genuine "invention" or "discovery" must be demonstrated "lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art." *Cuno Engineering Corp. v. Automatic Devices Corp.*, 314 U.S. 84, 92, [62 S.Ct. 37, 41, 86 L.Ed. 58] (1941); see *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 152–153, [71 S.Ct. 127, 130, 95 L.Ed. 162] (1950); *Atlantic Works v. Brady*, 107 U.S. 192, 199–200 [2 S.Ct. 225, 230–31, 27 L.Ed. 438] (1883).

*Sears, Roebuck & Co. v. Stiffel*, 376 U.S. 225, 230, 84 S.Ct. 784, 788, 11 L.Ed.2d 661 (1964).

Although the Supreme Court has written much patent law between 1964 and the present, it has not seen fit to alter this interpretation. We note, of course, that the *Sears, Roebuck* case was more an assertion of federal supremacy in the patent law field than an actual interpretation of § 103; nonetheless, we can find no Supreme Court support for ascribing patentability to the "slight technological advance" which was involved in the issuance of the Matthews RE. 267 patent. *See Dann v. Johnson*, 425 U.S. 219, 225–29, 96 S.Ct. 1393, 47 L.Ed.2d 692 (1976); *Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc.*, 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1965); *Reynolds Metals Co. v. Acorn Building Components, Inc.*, 548 F.2d 155, 162 (6th Cir. 1977).

In patent cases such as the instant appeal, the federal courts must be mindful of the principles behind the constitutional

provision which authorizes Congress "To promote the Progress of . . . useful Arts, by securing for limited Times to . . . Inventors the exclusive Right to their . . . Discoveries." U.S.Const. art. I, § 8, cl. 8. In *Graham v. John Deere Co., supra*, 383 U.S. at 5–6, 86 S.Ct. at 687, the Supreme Court wrote:

> The clause is both a *grant of power and a limitation*. This qualified authority, unlike the power often exercised in the sixteenth and seventeenth centuries by the English Crown, is limited to the promotion of advances in the "useful arts." It was written against the backdrop of the practices—eventually curtailed by the Statute of Monopolies—of the Crown in granting monopolies to court favorites in goods or businesses which had long before been enjoyed by the public. * * * Innovation, advancement, and *things* which add to the sum of useful knowledge are inherent requisites in a patent system which by constitutional command must "promote the Progress of . . . useful Arts." This is the *standard* expressed in the Constitution and it may not be ignored.

■ We are aware that we could have reached a similar result without this extended analysis of the merits or lack thereof of the patent at issue by holding that appellee Lucerne, having written notice concerning Stearns Patent 1,892,542, issued December 27, 1932, fraudulently procured the Matthews RE. 267 patent by failing to disclose the Stearns patent to the examiner in the Patent Office. *See Buzzelli v. Minnesota Mining & Manufacturing Co.*, 521 F.2d 1162 (6th Cir. 1975). As an alternative ground for our holding the patent invalid, we accept this contention, but we have chosen first to deal with the merits of the patent itself in preference to founding our decision upon Matthews' failure to cite Stearns.

We therefore hold that Matthews RE. 267 patent is invalid for obviousness as a matter of law under 35 U.S.C. § 103 (1970). We vacate the judgment of the District Court and remand for dismissal of Lucerne's infringement action.

All the above to the contrary notwithstanding, we have no inclination as a matter of appellate decision to award anything more than normal costs to the successful appellant. In this closely contested case, we find no such extraordinary circumstances as to require us now to reverse the District Judge's denial of attorneys' fees. Because the posture of the case has changed, however, since that denial was entered, a renewed motion for consideration of the attorneys' fees question may properly be directed to the District Judge.