**PETTIBONE CORPORATION, Plaintiff,**

v.

**FARGO MACHINE & TOOL COMPANY, Defendant.**

Civ. A. No. 40200.

United States District Court,
E. D. Michigan, S. D.

March 14, 1978.

William H. Francis, Detroit, Mich., and Louis Robertson, Arlington Heights, Ill., for plaintiff.

Benjamin W. Colman, Southfield, Mich., for defendant.

## MEMORANDUM OPINION

RALPH M. FREEMAN, Senior District Judge.

This is a motion for partial summary judgment brought by defendant Fargo Machine & Tool Company. The primary issue on this motion is the validity of Pettibone's reissue patent # 28,659.

*Facts*

The Beardsley & Piper Division of Plaintiff Pettibone has been producing and selling mixing-mulling machines to the foundry industry for the preparation of molding sands used in the casting of metals for a number of years. This type of machine mixes and mulls the sand with a binder, additives and water so that the mixture becomes suitable for making molds in which molten metal can be cast. The mixing is done in a bowl by means of plows which rotate in a horizontal path through the sand. In Series B mulling machines, built by Pettibone since 1962, the plows are attached to the outer peripheral edge of a hub which is vertically central to the bowl and rotated by an upstanding motor-driven shaft.

The foundry sand to be mixed and mulled with added binders and other materials is abrasive and the plows are expected to wear in normal use so that a number of times during the life of the machine they will need to be restored by welding or replaced with new plows. Beginning in 1962, Pettibone began to construct the Series B (Hunter) mulling machine with a lift plow and a side plow, the side plow extending forward and inward from the lift plow and acting as a deflector to guide sand onto the lift plow. The main lift plow was made with a flat planar portion and a triangularly-shaped upstanding flange extending along the entire postmedial edge of the planar portion. This lift plow, called by Pettibone a "lip" or "standard" plow and by Fargo a "low wing" lift plow, became the standard production lift plow installed by Pettibone in its Series B mulling machines shortly following introduction of the machines on the market.

On November 20, 1967, Pettibone filed the first Wenninger patent application for a machine embodying a wing plow structure as a component thereof. Neither the plow structure nor the machine was in fact ever built commercially by plaintiff. Rather, Pettibone's chief engineer, Angelo Bisinella, designed another lift plow which was considered to be an improvement over Wenninger's. The Bisinella application for patent was filed January 27, 1971. One of the improvements in the Bisinella design was the substitution of a "high wing" lift plow instead of the previous "low wing" lift plow. The angularity and location of the high wing flange, however, remained essentially the same as that of the former low wing flange on the lift plows.

Plaintiff sells replacement plows and plow holders for its machines. Defendant is in the business of selling replacement parts for various foundry machines, and among these are replacement parts including plows and related components for Plaintiff's Series B machines. On December 16, 1969, Plaintiff decided to build all Series B machines henceforward with a "wing-type" plow as standard, and later reworked its inventory of low-wing lift plows into high-wing lift plows.

Defendant has made and sold what it claims to be its own design of high wing lift plows for Plaintiff's Series B machines. One of its defenses to this lawsuit is that its plows do not infringe in fact on the Wenninger reissue patent. For purposes of this motion involving the issue of validity, however, Defendant has assumed that Series B machines equipped with a high-wing lift plow (supplied by Defendant) come within the claims of the reissue patent. By making this concession, however, Defendant has relinquished no claim to the repair and replacement doctrine discussed below.

Some dispute exists as to the characterization of the claims in the original Wenninger patent and the reissue patent. Both parties agree that the specification in the Wenninger applications describes a plow construction as the principal novelty. According to Defendant, the claims in the original parent Wenninger application were all directed to a combination of components forming a mulling apparatus. According to Plaintiff, the claims in the original parent Wenninger application were all directed to novelty in the plow construction but "in a style defining" a combination of components forming a mulling apparatus, naming such non-plow parts as bowl, hub, and means for rotation. This is also true as to all claims of the reissue patent; in other words, none of the reissued or original claims describes only a plow structure.

On December 3, 1969, after the patent examiner had closed prosecution of the parent application on the merits, Plaintiff for the first time presented application claims 10 and 11, directed to a mulling plow per se. Since prosecution of the application had been closed, the examiner refused entry of these claims on the ground that the proposed amendment presented new issues requiring further consideration. As a result of the rejection, Plaintiff prepared a continuation application in which the substance of the two refused claims to the plow alone was embodied in claims 4 and 5. The examiner rejected claims 4 and 5 because they failed to claim the invention distinctly and because they were anticipated under an earlier patent. As a result of these rejec-

tions, Plaintiff cancelled claims 4 and 5 by an amendment filed January 20, 1971. Defendant characterizes this cancellation as an "abandonment." In place of claims 4 and 5, Plaintiff filed claim 6 in that same amendment—which became claim 4 of the original Wenninger patent.

A week after the amendment in the Wenninger continuation patent, plaintiff filed an application for the Bisinella patent, which was directed at high wing plow structures per se. The Bisinella patent was issued on May 30, 1972, but was disclaimed by Plaintiff as invalid on July 27, 1973, within 60 days after this suit was filed. The reason for the disclaimer was the discovery by Plaintiff that the Bisinella plow had been on sale in a commercial context for more than one year. On April 17, 1974, Defendant served Plaintiff with a motion for summary judgment, and thirty days later, on May 17, 1974, Plaintiff filed for reissue of the original Wenninger patent, the patent then in suit. The reissue Oath which accompanied the application alleged that the original Wenninger patent was partly inoperative by reason of the failure to include claims like claims being presented. The claims in question were in fact similar to those which had been earlier rejected in the Wenninger continuation application. In that Oath, Plaintiff for the first time brought to the attention of the patent office the low wing plow construction Plaintiff had sold for several years prior to filing the Wenninger application. The Oath indicated that the reissue application was being filed as a result of the assertions of invalidity and non-infringement made by the Defendant in its answer to the Supplemental Complaint. In view of such assertions, Plaintiff stated that the effect of the claim coverage in the Wenninger patent was inadequate or uncertain and therefore the patent was "partially inoperative" from the standpoint of achieving voluntary recognition.

Before the reissue application was acted upon by the examiner, plaintiff amended the application on June 19, 1974 by adding two claims, each directed to a "winged plow." These claims, 8 and 9, were similar, in that they were claims for a plow per se, to those earlier filed in the continuation application that the examiner had rejected. The examiner's first action on the reissue application was one of rejection. Claims 1–9 of the reissue application were rejected on several grounds, including that the oath failed to show how errors in the original patent arose and referred to events subsequent to the grant of the original patent; that the claims were not based on inadventure, accident or mistake in the original patent (claims 6–9 only); and that the claims enlarged the scope of the original patent. Plaintiff's vice-president, Roy Nosek, then submitted a Second Supplemental Oath which was directed to the deficiencies noted by the examiner. Plaintiff also amended its applications to drop reissue claims 5–9 and add four new claims, 10–13. Claim 11 was subsequently cancelled, and claims 10, 12 and 13 became incorporated in the reissue patent as claims 5, 6 and 7. On August 4, 1975, the reissue application was allowed, and the reissue patent in this suit issued on December 23, 1975.

### Legal Issues and Conclusions

The primary legal issue presented on this motion for summary judgment is whether defendant is liable for infringement as a matter of law.[1] Defendant's primary contention is that all of the claims of the reissue patent are combination claims, and that no one can be liable as an infringer for supplying an *unpatented* and *unpatentable* component of the combination. Plaintiff

---

1. The factual context of this issue includes two aspects: 1) Where defendant supplies high wing plows as replacement parts for plaintiff's Series B mulling machines already equipped with similar plows (non-conversion sales); 2) where defendant supplies high wing plows as replacement parts for plaintiff's Series B mulling machines equipped with low-wing plows (conversion sales). Because defendant's position is stronger with respect to non-conversion sales, the Court has applied the law using that factual context. Obviously, to the extent defendant may be liable for infringement for non-conversion sales, it will also be liable for conversion sales.

contends that the claims of the reissue patent are not combination claims, but rather are claims which protect the plow structure per se in the context or environment of the mulling apparatus. Plaintiff's descriptive term for their patent is a "patent per se in situ."

As a preliminary matter, the doctrine of "repair and replacement" is central to defendant's case. When a patented machine or article or combination comprising unpatented elements is sold by a patentee, the purchaser is granted an implied license to use the purchased patented machine. The right to use encompasses repair but not reconstruction of the machine, the latter being considered a remaking of the machine and hence an infringement. The theory of the implied license granted to the purchaser is that the patentee has received his reward for his patent from the profit opportunity afforded to him as sole maker and seller or from the royalties payable to him by those granted licenses to manufacture and sell. Once he has parted with the machine, and title to the machine rightfully passes to the purchaser, the machine is no longer within the protection of this patent right. Thus the purchaser, acquiring title, may continue use of it until it is worn out or he may repair it as he pleases. He is only prohibited from constructing a substantially new machine.

■ As a corollary to the doctrine of repair and replacement, the supplier of the replacement part is not an infringer if the purchaser does not become an infringer by reason of his repairing the machine. There can be no "contributory infringement" by a supplier of replacement parts if there is no "direct infringement" by the purchaser who repairs the machine. *Aro Manufacturing Co. v. Convertible Top Replacement Co.* [Aro I], 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961); *Mercoid Corp. v. Mid-Continent Co.,* 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944).

Defendant's position on the issue of contributory infringement begins with the proposition that the combination machine claims measure the grant. Defendant reviews the individual claims of the reissue patent and concludes that each of them is a combination claim, not a claim to a plow structure per se. Plaintiff, on the other hand, contends that the claims are directed to the plow itself, and that the mention of other mulling components was necessary to define the environment of the patented plow structure.

Defendant next argues that the plows and plow components are unpatented and unpatentable elements of the machine combination. This argument is based on the fact that the examiner disallowed continuation claims 4 and 5, directed at patents on plow structures per se, and that plaintiff acquiesced in the cancellation of those claims. Defendant contends that plaintiff cannot resurrect those claims by arguing that the allowed combination claims are the equivalent of the abandoned claims, and further buttresses this contention by showing that the reason plaintiff was willing to abandon claims 4 and 5 of the continuation application was that those claims were to be covered in the Bisinella application. The Bisinella patent, directed at plow structures per se, was later disclaimed as invalid. Therefore defendant urges that plaintiff is precluded from resurrecting the old claims in the new guise of "patent per se in situ." Moreover, the cancellation of claims 4 and 5 and the disclaimer of the Bisinella patent placed the plow constructions in the public domain, making them not only unpatented but unpatentable.

From this position, defendant moves to the logical conclusion that there can be no direct or contributory infringement from the sale of an unpatented and unpatentable replacement part of a combination patent under the doctrine of repair and replacement discussed above. Defendant concludes this portion of the argument by pointing out that patents must be claimed with particularity, that if a patent includes things before known or before in use that a patentee is not entitled to recover because the patent is broader than his invention, and that if the invention is really an improvement on a previously known combination, the patent should be limited to such improvement. Plaintiff claims that their

patent is properly limited, and that the mention of the other component parts of the mulling apparatus was simply required by the examiner to define the environment of the patent. Plaintiff concedes, moreover, that defendant is entirely right on the law if the plow itself is not protected by patent. Their argument depends on the concept of "patent per se in situ" as discussed above.[2]

The law concerning combination patents is not nearly so clear-cut as defendant suggests. Two seminal cases, *Lincoln Engineering Co. v. Stewart-Warner Corp.*, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1937) and *A & P Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950) established general principles upon which other cases have built. The issue in *Lincoln Engineering* was whether a combination patent in which the improvement of a new coupling device could be extended to establish a monopoly over components such as a headed nipple for receiving lubricant and a grease pump. The Court held that the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination:

> The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention. And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination. 303 U.S. at 549–550, 58 S.Ct. at 665.

In *A & P*, the Court made clear that a patent cannot be used to protect a combination of old elements, even where the combination joins those elements in a way which is novel and inventive:

The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechanics. This case is wanting in any unusual or surprising consequences from the unification of the elements here concerned  .    .    .

In a third case, however, *Williams Manufacturing Co. v. United Shoe Machinery Corp.*, 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537 (1941), the Court addressed a situation not covered by either *Lincoln Engineering* or *A & P.* In *Williams*, the patentee sought to enforce a combination patent for heel seat lasting in which novel elements were joined with old ones to form a new invention. The Court held that the patent did not overclaim by mentioning the old components because they were necessary to define the environment in which the new components operated. The Court stated:

> In stating his claims, the patentee sometimes says 'a machine of the class described having, in combination,    .    .    .' Obviously, no machine will infringe which does not have in combination the means specified in each of the claims for accomplishing the particular portion of the total operation covered by the claim. Other claims refer to 'a lasting mechanism of the class described having, in combination,    .    .    .' The same comment is applicable. Other claims read: 'In a machine of the class described, the combination    .    .    .' Such preliminary statement is commonly and properly used to specify the type of machine in which the claimed subsidiary combination of elements works an improvement over the prior art. *In describing the novel combi-*

**2.** Finally, as to the conversion sales, defendant argues that it cannot be liable for contributory infringement because plaintiff instituted a firm policy of repairing and replacing low wing plows in their machines with high wing plows. Defendant contends that this policy gives owners of plaintiff's machines an implied license to repair their machines with high-wing plows, even if those plows are supplied by defendant. This argument is clearly irrelevant if the patent protects the plow itself rather than the combination of mulling machine components.

*nations embodied in the claims, it was necessary to make reference to certain portions of the machine in connection with which the new combinations were to operate and with which they were to dovetail, but, in mentioning these other mechanical parts, the claim does not purport to embody them as elements of the claimed combination.* To construe such a claim for a combination of new elements intended to be embodied in some well recognized mechanical aggregation, such as a sewing machine or a washing machine, as a claim covering all the mechanical details, or all the well known parts of the machine would be to nullify every patent for an improvement in a type of machine long in use and would invalidate thousands of patents for improvements in standard machines. It would be difficult to describe an improvement in a washing machine without naming such a machine as the thing to which the patent is addressed, and equally difficult to refrain from referring to various parts of the machine, such as the tub or motor which actuates the washer. But it has never been thought that a claim limited to an improvement in some element of the machine is, by such reference, rendered bad as claiming a monopoly of tubs or motors used in washing machines. 316 U.S. at 368–69, 62 S.Ct. at 1182 (emphasis added).

*Williams* was thus distinguished from *Lincoln Engineering*, in which a patentee sought to establish contributory infringement on the part of a supplier of old components, and from *A & P*, in which the combination itself was new but all the components were old.

■ Moreover, although *Williams* involved a direct infringement, the principle would seem to apply with equal force to a case of contributory infringement. Where a combination patent claims one component

as its principal novelty, and that novelty is described in an environment of old elements, a party who supplies the novel element to be used in the environment described in the patent is a contributory infringer. There would be no contributory infringement if a party supplied one of the old elements as a replacement part, and no contributory infringement if a party supplied the novel component for a different purpose. But when a party supplies the novel component for use in the defined environment, the patentee has a cause of action for contributory infringement.

The Sixth Circuit decision in *Holstensson v. V–M Corporation*, 325 F.2d 109 (6th Cir. 1963), does not require a different result. In that case, a patent which claimed a spindle type record changer (new) in combination with a cycling mechanism (old) was declared invalid for overclaiming and for not describing a patentable combination. In that case, however, the patentee asserted that the co-action of the new component with the old elements made the entire mechanism a valid patentable combination. Presumably a party could be liable for contributory infringement of such a patent by supplying old cycling mechanisms as replacement parts. Such is clearly not Plaintiff's position in the instant case, where Plaintiff has made clear from the outset that the patent is directed only to the plow construction, and not to the other mulling machine components.[3]

■ Another clear inference to be drawn from *Williams* is that the doctrine of repair and replacement, which is so crucial to the defendant's argument, would not apply where the wear part itself is the patented invention. In such a case, the supplying of the patented wear part would constitute actual reconstruction of the protected in-

---

**3.** Moreover, the court's findings as to overclaiming in *Holstensson* were clearly based on an evaluation of the patentee's intent. 325 F.2d at 121. A different finding as to intent would certainly have altered the result in that case. While such considerations are ordinarily not a proper subject for a summary judgment motion, since they involve factual evaluations based on testimony and an adversarial presentation of evidence not generally before the court, in this case all evidence of Plaintiff's intent in prosecuting the reissue patent is before the Court by way of affidavit, and Plaintiff's actions were vigorously opposed by Defendant at every juncture. This Court must therefore consider all of the pertinent patent history, including evidence of intent, in evaluating the legal validity of the patent in suit.

vention rather than permissible repair. A recent case which explored this distinction most thoroughly is *Wells Manufacturing Corp. v. Littelfuse, Inc.*, 547 F.2d 346 (7th Cir. 1976). In that case, the court held that link members connecting a brake pedal and brake mechanism were necessary to give life, meaning and vitality to a patented combination, and thus the manufacture and sale of replacement brake switches constituted permissible repairs rather than reconstruction of the patented structure. In the course of its holding the court stated:

> The determination of whether 'repair' or 'reconstruction' occurred in the present case . . . depends upon the scope of claim 1 of the Raab patent. If, as Wells asserts, the patented entity is the brake switch alone, replacement with the Wells brake switch constitutes reconstruction. 547 F.2d at 351.

Defendant's claim that they are permitted to supply high wing lift plows for a mulling apparatus under the repair and replacement doctrine thus depends on a finding by this Court that the Wenninger reissue patent is a combination patent and not a patent on the plow per se in situ.

■ The claims of the reissue patent involved in this suit seem clearly to focus on the plow construction as the novel element. Claims one, four and five are in Jepson form, the primary intent of which is to segregate the environmental components from the patented novelty. Claim 2 incorporates the "mulling apparatus as set forth in claim 1" (which was defined in Jepson form), and then goes on to describe the novel lift plow. Claims 6 and 7 are stated in terms of "the improvement in a mulling apparatus according to claim 5" (also Jepson) and then describe certain features of the novel lift plow. It seems apparent to this Court, both from the claims themselves and from the patent history, that the patent in suit is, to use Plaintiff's term, a patent *per se in situ* directed to a plow construction. Subject to the defenses defendant waived for purposes of this motion, that patent is infringed by defendant's accused wing plows in Series B mulling machines. Whether or not the machine in question was previously equipped with a high wing lift plow is irrelevant, since it is the plow itself which is the subject of the patent. Therefore any time defendant or anyone else supplies a high wing lift plow, which *in fact* infringes the patent in this suit, for use in the defined environment, that act constitutes a contributory infringement.

Defendant has contended, however, that the high wing plow construction, as such, is unpatentable. If such is the case, then defendant could not be liable for contributory infringement for supplying an unpatentable invention or component. *Aro Manufacturing Co., Inc. v. Convertible Top Replacement Co., Inc.*, 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1960). Defendant's argument concerning the patentability of the plow is based in part upon plaintiff's alleged abandonment of the claims to plows per se in the reissue application (Plaintiff's acquiescence in the patent examiner's disallowance of continuation claims 4 and 5) and the disclaimer of the Bisinella patent. If Plaintiff did abandon its claims to plow constructions per se, then those claims would become part of the public domain and could not be later recaptured in some other form. *Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132 (1940).

■ Plaintiff contends, however, that it never abandoned its claims to a high-wing plow structure, but rather that it was required by the Patent Office to restate those claims in combination form. This contention is supported by the rejection statement of the patent examiner in connection with reissue claims 4 and 5 (Defendant's exhibit 13) in which the examiner stated:

> Claims 4 and 5 are rejected under 35 U.S.C. 112 as failing to distinctly claim the invention. The claims are initially drawn to a "mulling plow" but subsequently refer to the manner in which the plow is related to mulling apparatus structure or operation thereof. . . . Such claims are thus indefinite in scope and are subject to alternate interpretations. To be definite the claims must clearly recite the mulling plow structure

per se or unequivocally recite a combination of the mulling plow with the mulling apparatus structure.

Although Defendant asserts that Plaintiff acquiesced in the cancellation of reissue claims 4 and 5 because it expected the plow construction to be covered by Bisinella, and that the cancellation thus constitutes a legal abandonment, the written statement of the patent examiner and Plaintiff's explanation of the action taken raise serious issues of fact as to whether or not Plaintiff abandoned all claims to a plow structure per se. A summary judgment is therefore clearly inappropriate on this issue.

The second ground on which Defendant seeks summary judgment is patent misuse, which has been characterized as an extension of the equitable doctrine of "unclean hands" to the patent field. Since it is an equitable doctrine its application has not been limited to any particular type of violation (such as antitrust), and the doctrine has been applied when the patentee has used the patent grant contrary to the public interest, primarily in cases where the patent has been used to extend the patentee's property right beyond the claims of the patent. Courts have held that the property rights granted to the inventor by the patent must be limited to the invention defined by the claims. If the patentee attempts to go beyond the limit of the exclusive property rights granted, he may be restrained, and if the patent is used as a tool to restrain trade in areas not within the four corners of the patent, the patentee may lose his right to ask the courts to protect his lawful patent property rights. The doctrine of patent misuse as set forth in the *Morton Salt Co. v. G. S. Suppiger Co.* case, 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1941), is as follows:

A patent operates to create and grant to the patentee an exclusive right to make, use and vend the particular device described and claimed in the patent. But a patent affords no immunity for a monopoly not within the grant, and the use of it to suppress competition in the sale of an unpatented article may deprive the patentee of the aid of a court of equity to restrain an alleged infringement by one who is a competitor . . . It is a

principle of general application that courts, and especially courts of equity, may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest.

The core of Defendant's argument concerning patent misuse is that Plaintiff has misused the reissue patent by seeking to monopolize sales of the plow, which defendant claims is an unpatented and unpatentable component. Therefore it is clear that the misuse defense is a direct corollary of the noninfringement claimed in part one, discussed above: If that patent in question is a combination patent, as Defendant claims, and not a patent per se in situ, as Plaintiff claims, then Plaintiff is arguably liable for misuse in trying to enforce a monopoly on the plow structure itself. As in the noninfringement defense, Defendant's argument rises and falls on whether the claims of the reissue patent protect the plow structure per se or merely the combination of components which constitute the mulling apparatus. Since the Court has already held that the patent in suit is not a combination patent, but rather is a patent directed at the plow structure per se, defendant has no ground for summary judgment on the basis of patent misuse.

Defendant also contends that the Court should grant summary judgment against Plaintiff because Plaintiff obtained the original Wenninger patent and the reissue patent with unclean hands. The requirement to make complete disclosure to the Patent Office with respect to any pending application is set forth in *Precision Instruments Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945), wherein the Court stated:

Those who have applications pending with the Patent Office or who are parties to Patent Office proceedings have an uncompromising duty to report to it all facts concerning possible fraud or inequitableness underlying the applications at issue . . . Public interest demands that all facts relative to such matters be submitted formally or informally to the

Patent Office, which can then pass upon the sufficiency of the evidence. Only in this way can that agency act to safeguard the public in the first instance against fraudulent patent monopolies.

Defendant argues that Plaintiff failed to deal candidly with the Patent Office in not revealing, during the prosecution of the Wenninger patent and continuation applications and the Bisinella application, that it had been producing for some time a low-wing or "lip"-type lift plow that was arguably prior art for the winged plow structure that it disclosed in those applications. Defendant's argument notes that in all matters relating to the three applications, only the Plaintiff contributed the information used or failed to inform the Office of possible prior art. Defendant then suggests that if the low-wing plow was prior art for the Bisinella plow (and Plaintiff submitted it as such to the Patent Office), and if the plow structure in the Wenninger reissue patent is the equivalent of Bisinella (as Plaintiff has contended in the course of this litigation), then the low-wing plow must be prior art for the plow structure revealed in the Wenninger reissue patent.

Plaintiff's response, supported by the various Oaths of Roy Nosek, general manager of Plaintiff's Beardsley & Piper Division, is that the low-wing lift plow was not considered relevant and material until Defendant made an issue of it at the beginning of this case. At that time, Plaintiff did disclose the low-wing plow as prior art in the Wenninger reissue application. The rationale behind the failure to disclose the low-wing plow in the original Wenninger application appears in two of Nosek's Oaths, the first of which states:

the triangular lip of the lift plow illustrated in said Beardsley & Piper drawing No. 110G88A (lip-type plow) is believed to serve as a stiffening and reinforcing medium only and not to have the structural or functional characteristics of the trailing portion of the platelike wing struc-

ture of petitioner's original Wenninger patent No. 3,602,442

and the second of which goes on to explain:

Because this supplemental oath includes a reference to the original oath, I have reviewed that oath and find one word in there which could be misinterpreted. The word 'only' on page 3 was intended to say that I believed that the lip serves no other function no matter how insignificant. It inevitably has a tendency to reduce the flow of sand off the edge of the lift portion of the plow inwardly toward the hub. I do not know that this was intended or that the flow mentioned was reduced to any significant extent.

Thus according to Nosek, the function of the low-wing or lip on the controversial plow was perceived by Plaintiff as having a significantly different function than the high wing of the Wenninger and Bisinella constructions—stiffening and reinforcing rather than deflecting. Moreover, Plaintiff does not acknowledge that any conflict exists between the failure to disclose the low-wing plow as prior art on the Wenninger application and the disclosure on the Bisinella patent, stating that, as to Bisinella, "obviously any unclean hands there would have been completely purged by the disclaimer of the Bisinella patent."

Plaintiff's response, however, merely sidesteps Defendant's argument, and the Court agrees that Defendant's position has a logical force that has not been adequately met by Plaintiff's explanation. On this motion for summary judgment, however, the Court sees substantial issues of material fact which require that Defendant's motion be denied. First, the legal basis for Defendant's motion, as articulated in the *Precision Instrument* case, is the duty to report all relevant facts to the Patent Office. Plaintiff has presented a credible explanation for their failure to disclose the low-wing lift plow as prior art in the original Wenninger application, and the Patent Office itself was apparently satisfied with the explanation.[4] That Plaintiff has taken in-

4. When Defendant raised the failure to disclose in opposition to the reissue application, the Patent Examiner stated that he found the omission both immaterial and inadvertent, and that if he had known of the existence of the low-wing plow it would not have changed his deci-

sion on the issuance of the Wenninger patent. See Patent Office Decision on Petition and Protest, April 30, 1975 submitted as part of the record in support of Plaintiff's response to Defendant's motion for summary judgment, pp. 312–321.

consistent positions with respect to the same prior art on other occasions is not conclusive evidence of unclean hands; it merely raises a question of intent which must be resolved at trial. Similarly, while Defendant has argued vigorously and extensively that the facts set out by Nosek in the reissue and supplemental Oaths are illogical and incorrect, the evaluation of the functional value of the low-wing plow as opposed to the standard flat plow (the subject of the various Oaths) is not a proper subject for summary judgment. Any illogical, inconsistent, or demonstrably incorrect statements by Plaintiff would have to be weighed and balanced with the other evidence in the case to determine whether Defendant can prevail on the defense of unclean hands.

Defendant also contends that 35 U.S.C. § 112 offers an alternative and independent basis for summary judgment. That section provides in pertinent part:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Defendant first suggests that the continuous modifications and amendments to the reissue claims violate the statutory requirement that the invention be described in "such full, clear, concise, and exact terms as to enable any person skilled in the art . . to make and use the same." No case has even suggested, however, that a patent may be invalid under § 112 merely because it has been amended. On the contrary, numerous cases have held that amendments, if properly submitted, will not invalidate a patent and that when amendatory language is accepted and a patent issued thereon, the modified language of the specification and claims defines the invention and constitutes the grant. See, e. g., *Ingersoll-Rand Co. v. Brunner & Lay, Inc.*, 474 F.2d 491 (5th Cir. 1973). At most, Defendant has done no more than raise an issue of fact by suggesting that the numerous amendments to the reissue application somehow violate § 112.

Defendant further contends that the reissue patent does not disclose the "best mode contemplated by the inventor" for carrying out the invention; again, Defendant has merely raised an issue of fact. Defendant stresses that the ultimate commercial form of the high wing plow was not disclosed in the original Wenninger patent, but there is no evidence to suggest that Wenninger contemplated a better mode at the time of the original filing in 1967. While the Court agrees with Defendant that patents for inventions which have never been put to use (paper patents), are strictly construed, Defendant, by contending that the patent in suit does not disclose the best mode contemplated by Wenninger, has done no more than raise an issue of fact as to whether the patent may be a paper patent—a fact which Plaintiff, by the very existence of this lawsuit, vigorously denies.

Contending that depictions in the drawings of the reissue patent are so inconsistent with the claims and specifications that they fail to meet the statutory requirements of § 112, Defendant has raised two specific points which merit some attention. First, Defendant calls attention to the discrepancy between the claims and the drawings as to whether the wing of the plow extends higher than the low outer rim of the hub. Defendant's own expert, however, conceded on deposition that the drawings do depict the wing as extending above the hub (as stated in the claims). Plaintiff at oral argument further showed how a draftsman's error on one of the drawings could account for an apparent inconsistency, and argued with some persuasive force that even if such an inconsistency existed it would not be of such magnitude as to invalidate the patent. Plaintiff, along with Defendant's expert (Krass), has clearly presented a factual dispute on this issue. Similarly, while Defendant contends that the wing of the plow is not of "substantially

uniform height" as stated in the claims, his argument depends on a disputed assumption as to whether a support bracket is in fact part of the wing. Defendant has presented no basis for summary judgment under 35 U.S.C. § 112, since every point raised under that provision is the subject of serious factual dispute. Moreover, the Court notes that this section is a particularly inappropriate provision upon which to base a summary judgment, since the issue of whether a specification is made "in such full, clear, concise and exact terms as to enable any person skilled in the art . . . to make and use the same" is one which would almost invariably be the subject of a bona fide factual dispute.

Defendant has also urged that summary judgment be granted because Plaintiff violated 35 U.S.C. § 251, which provides in part:

Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

The basis of Defendant's claim is that Plaintiff had deceptive intent in the prosecution of the original and reissue patents because only the disclaimed Bisinella patent was ever intended to protect a plow structure per se. Defendant therefore asks the Court to infer that the present attempt to cover plow structures under the Wenninger patents is deceptive. In light of both the foregoing discussion concerning the viability of the reissue patent, and the Patent Office's rejection of this identical argument, Defendant is clearly not entitled to summary judgment on this issue. As Defendant itself pointed out in its brief, deceptive intention is a question of fact which must be proved by "clear, unequivocal and convincing evidence." *National Rolled Thread Die Co. v. Ferry Screw Products*, 541 F.2d 593 (6th Cir. 1976). The issues of deceptive intention, unlawful recapture of allegedly abandoned claims, and unlawful enlarging of claims are subject to vigorous factual dispute which precludes summary judgment for Defendant pursuant to § 251.

The final basis on which defendant seeks summary judgment is that the reissue patent is invalid in view of the provisions of 35 U.S.C. § 102 and/or § 103. Those sections preclude the patenting of inventions for "anticipation" or "obviousness."

Numerous courts have held that anticipation and obviousness require factual determinations. In *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965) the Supreme Court discussed at some length the requirement and tests for "nonobviousness":

While the ultimate question of patent validity is one of law, *A & P Tea Co. v. Supermarket Corp., supra*, at 155, the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. See Note, Subtests of 'Nonobviousness': A Nontechnical Approach to Patent Validity, 112 U.Pa.L.Rev. 1169 (1964).

This is not to say, however, that there will not be difficulties in applying the nonobviousness test. What is obvious is not a question upon which there is likely to be uniformity of thought in every giv-

en factual context. The difficulties, however, are comparable to those encountered daily by the courts in such frames of reference as negligence and scienter, and should be amenable to a case-by-case development. We believe that strict observance of the requirements laid down here will result in that uniformity and definiteness which Congress called for in the 1952 Act.

While we have focused attention on the appropriate standard to be applied by the courts, it must be remembered that the primary responsibility for sifting out unpatentable material lies in the Patent Office. To await litigation is—for all practical purposes—to debilitate the patent system.

It is clear from *Graham* and from subsequent cases in this Circuit, i. e., *Allied Wheel Products v. Rude*, 206 F.2d 752 (6th Cir. 1953); *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193 (6th Cir. 1974); *Westwood Chemical, Inc. v. Owens-Corning Fiberglas Corp.*, 445 F.2d 911 (6th Cir. 1971), *cert. denied*, 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 786 (1972); *Lucerne Products v. Cutler-Hammer*, 568 F.2d 784 (6th Cir. 1977), that anticipation and obviousness are issues requiring complex factual inquiry. The plaintiff in this case, of course, vigorously denies that the invention covered by the reissue patent was either anticipated or obvious; moreover, the Patent Office has specifically rejected these defenses which were raised in Defendant's protest to the reissue patent. While this Court is not bound by the decision of the Patent Office, that decision and plaintiff's detailed technical response raise sufficient issues of fact to preclude a summary judgment in favor of defendant on this issue.

For the reasons stated herein, Defendant's motion for partial summary judgment is denied. Plaintiff's cross-motion for summary judgment is granted solely as to the issue of whether the reissue patent is a valid patent *per se in situ*.

An appropriate order shall be submitted.